IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| RALPH PRAYLOW, JR., | ) | CIVIL ACTION NO. 9:15-3557-TMC-BM |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

The Plaintiff filed the complaint in this action pursuant to 42 U.S.C. § 405(g), seeking

judicial review of the final decision of the Commissioner wherein he was denied disability benefits.

This case was referred to the undersigned for a report and recommendation pursuant to Local Civil

Rule 73.02(B)(2)(a)(D.S.C.).

Plaintiff applied for Disability Insurance Benefits (DIB) on November 21, 2013,

alleging disability beginning September 12, 2013, due to a spinal cord injury, traumatic brain injury

(TBI), migraine headaches, right frontal lobe atrophy, and diabetes. (R.pp. 10, 181, 221, 225).

Plaintiff's claim was denied both initially and upon reconsideration.  Plaintiff then requested a

hearing before an Administrative Law Judge (ALJ), which was held on December 11, 2014 . (R.pp.

34-69).  The ALJ thereafter denied Plaintiff's claim in a decision issued April 30, 2015. (R.pp. 10-

25).  The Appeals Council denied Plaintiff's request for a review of the ALJ's decision, thereby

making the determination of the ALJ the final decision of the Commissioner.  (R.pp. 1-5).



Plaintiff then filed this action in United States District Court. Plaintiff asserts that the ALJ's decision is not supported by substantial evidence, and that this case should be reversed with an award of disability benefits. The Commissioner contends that the decision to deny benefits is supported by substantial evidence, and that Plaintiff was properly found not to be disabled.

### Scope of review

Under 42 U.S.C. § 405(g), the Court's scope of review is limited to (1) whether the Commissioner's decision is supported by substantial evidence, and (2) whether the ultimate conclusions reached by the Commissioner are legally correct under controlling law. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); Richardson v. Califano, 574 F.2d 802, 803 (4th Cir. 1978); Myers v. Califano, 611 F.2d 980, 982-983 (4th Cir. 1980). If the record contains substantial evidence to support the Commissioner's decision, it is the court's duty to affirm the decision. Substantial evidence has been defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. **If there is evidence to justify refusal to direct a verdict were the case before a jury, then there is "substantial evidence."** [emphasis added].

Hays, 907 F.2d at 1456 (citing Laws v. Celebrezze, 368 F.2d 640 (4th Cir. 1966)); see also Hepp v. Astrue, 511 F.3d 798, 806 (8th Cir. 2008)[Noting that the substantial evidence standard is even "less demanding than the preponderance of the evidence standard"].

The Court lacks the authority to substitute its own judgment for that of the Commissioner. Laws, 368 F.2d at 642. "[T]he language of [405(g)] precludes a *de novo* judicial proceeding and requires that the court uphold the [Commissioner's] decision even should the court

2



disagree with such decision as long as it is supported by 'substantial evidence.'"  Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).

### Discussion

A review of the record shows that Plaintiff, who was forty-six years old at the time of the ALJ's decision, has a high school education plus two years of college and past relevant work experience as a nurse.  (R.pp. 24, 38, 181, 226, 235).  In order to be considered "disabled" within the meaning of the Social Security Act, Plaintiff must show that he has an impairment or combination of impairments which prevent him from engaging in all substantial gainful activity for which he is qualified by his age, education, experience, and functional capacity, and which has lasted or could reasonably be expected to last for a continuous period of not less than twelve (12) months.

After a review of the evidence and testimony in the case, the ALJ determined that, although Plaintiff does suffer from the "severe" impairments[1] of post-traumatic stress disorder (PTSD), anxiety, depression, organic mental disorder, disorders of the spine, right upper extremity neuropathy, and headaches (R.p. 12), he nevertheless retained the residual functional capacity (RFC) to perform light work[2] with limitations of only occasionally pushing and pulling with his dominant right upper extremity; occasionally feeling with his dominant right hand; frequently reaching, handling, fingering, and feeling with his dominant right upper extremity; never climbing ladders,

---

[1]An impairment is "severe" if it significantly limits a claimant's physical or mental ability to do basic work activities. See 20 C.F.R. § 404.1521(a); Bowen v. Yuckert, 482 U.S. 137, 140–142 (1987).

[2]"Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567(b).



ropes, and scaffolds; occasionally climbing ramps, stairs, stooping, kneeling, crouching, balancing, and crawling; avoiding bright, flashing lights and similar visual stimuli; and performing simple, routine, unskilled work with no public interaction  (R.p. 15).  At step four, the ALJ found that Plaintiff could not perform any of his past relevant work with these limitations. (R.p. 24).  However, the ALJ obtained testimony from a vocational expert (VE) and found at step five that Plaintiff could nonetheless perform other jobs existing in significant numbers in the national economy, and was therefore not disabled during the period at issue. (R.pp. 24-25).

Plaintiff asserts that in reaching this decision, the ALJ erred in determining that Plaintiff does not have a combination of impairments that meets or medically equals the severity of one of the Listings[3] of Impairments, erred in failing to grant sufficient weight to the medical evaluations conducted by the United States Department of Veterans Affairs (VA); and erred in directing Plaintiff to seek jobs recommended by the VE.  However, after a careful review and consideration of the evidence and arguments presented, the undersigned finds and concludes for the reasons set forth hereinbelow that there is substantial evidence to support the decision of the Commissioner, and that the decision should therefore be affirmed.  Laws, 368 F.2d at 642 [Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion"].

_____

[3]In the Listings of Impairments, "[e]ach impairment is defined in terms of several specific medial signs, symptoms, or laboratory test results." Sullivan v. Zebley, 493 U.S. 521, 530 (1990). A claimant is presumed to be disabled if his or her impairment meets or is medically equivalent to the criteria of an impairment set forth in the Listings. See 20 C.F.R. § 416.925.



**Medical Records**

Plaintiff reportedly suffered a TBI in 1990 or 1991 (over twenty years prior to Plaintiff's alleged disability onset date) after falling from a truck while serving in the Navy in Saudi Arabia (he later served in the Army).  (R.pp. 290, 475-476).  Records also indicate that he had C5/6 fusion done in 2008 (five years before Plaintiff alleges he became disabled).  (See R.p. 582). Plaintiff's impairments have been treated primarily at various Department of Defense medical centers, as well as at the Dorn VA Medical Center in Columbia.  Treatment has included general examinations, mental health counseling, occupational therapy, physical therapy, mental testing, yoga therapy, acupuncture, and the prescribing of various medications. (See R.pp. 366-466,, 473-485, 496-1586, 1588-1603, 1614-1623, 1624-1629, 1645-1670, 1671-1687, 1695-1725).

In June 2012, Dr. Peggy Wadman of the Dorn VA Hospital completed a C & P examination and an initial PTSD questionnaire in which she opined that Plaintiff did not meet a diagnosis of PTSD.  Dr. Wadman diagnosed Plaintiff with depressive and anxiety disorders and TBI, and opined that Plaintiff had occupational and social impairment with reduced reliability and productivity.  (R.pp. 343-355, 1671-1675, 1680-1687).  In August 2012, Dr. Scott Mooney, a neuropsychologist at DDEAMC Neuroscience and Rehabilitation Center, administered testing that indicated that Plaintiff had normal intelligence. Dr. Mooney opined that Plaintiff met Army retention standards despite his cognitive impairment. (R.pp. 389-396). In October 2012, Dr. Daniel Davidson and Dr. Marianne Wille completed a physical profile indicating that Plaintiff could not carry and fire a weapon; evade fire; ride in a military vehicle, wear body armor, or wear load bearing equipment for at least twelve hours a day; or do a two-mile run.  They further opined that Plaintiff could not perform



repetitive bending; could not lift more than fifteen pounds; and could not perform activities such as overhead reaching, crawling, or swimming. (R.p. 327).

On May 9, 2013, Dr. Wadman completed an Initial Evaluation of Residuals of TBI Disability Benefits Questionnaire. She checked boxes indicating that testing revealed mild impairment of memory, attention, concentration, or executive functions resulting in mild functional impairment; normal judgment; routinely appropriate social interaction; normal motor activity; mildly impaired visual spatial orientation; three or more subjective symptoms that mildly interfere with work; one or more neuro-behavioral affects that interfere with workplace interaction, social interaction, or both, but do not preclude them; the ability to communicate and comprehend spoken and written language; and normal consciousness. She thought that the residuals attributable to TBI included headaches and mental disorders. Dr. Wadman wrote that significant test findings included MRIs of Plaintiff's spinal cord (not his brain) indicating an asymmetry with loss of volume of the right temporal lobe. As to the functional impact, Dr. Wadman noted that Plaintiff reported difficulty paying attention to and remembering his daily tasks, remembering details of what he did earlier in the day, an inability to concentrate, and a need to reread everything he read. (R.pp. 473-484).

Also in May 2013, an Informal Physical Evaluation Board (PEB) related to the Department of Veterans Affairs concluded that Plaintiff, as a soldier, was physically unfit and recommended a rating of 90% and a permanent disability retirement. The PEB recited that Plaintiff was diagnosed with cognitive disorder of cryptic etiology on August 20, 2012, Plaintiff did not respond adequately to treatment, and he was unfit to work as a soldier based on his ability to function in high stress environments, make quick decisions, and interact efficiently with injured soldiers as required for his health care specialist position. Additionally, it was noted that Plaintiff reported in



2008 that he felt pain in his right shoulder associated with lifting items, and had developed bilateral cervical radiculopathy, cervical degenerative disc disease, and anxiety. Plaintiff's impairments were found to prevent him from common soldier tasks as well as the ability to function in his current assignment. (R.p. 288).

As noted, Plaintiff does not himself contend that his impairments were of a disabling severity during the period of time discussed hereinabove. Therefore, in order to be entitled to disability benefits, Plaintiff must show that his impairments substantially worsened as of and after September, 2013. Cf. Orrick v. Sullivan, 966 F.2d 368, 370 (8th Cir. 1992) [absent showing of significant worsening of condition, ability to work with impairment detracts from finding of disability].

Plaintiff was medically retired from the Army on September 12, 2013 (his alleged disability onset date). (R.pp. 285-286). However, four months later, on January 16, 2014, Dr. Jeanne Wright, a state agency physician, reviewed Plaintiff's records and opined that functional evidence did not suggest marked impairment due to his mental condition, and that while Plaintiff had a mental disorder, he retained the ability to perform simple tasks in an environment that did not involve continuous contact with the public. Dr. Wright thought that although Plaintiff needed to avoid vocations that demanded speed of production, multi-tasking, and interaction with public, he would be able to work regularly and attend to and perform simple tasks without special supervision. (R.pp. 83-85, 88-90). Also on January 16, 2014, state agency physician Dr. Irene Richardson opined that Plaintiff had the RFC to lift and/or carry fifty pounds occasionally and twenty pounds frequently, as well as the ability to stand and/or walk and to sit for six hours each in an eight hour day. Dr. Richardson thought Plaintiff could frequently climb ramps/stairs, balance, stoop, kneel, crouch, and



crawl; could occasionally climb ladders, ropes, and scaffolds; and could handle things frequently. (R.pp. 85-88). On May 23, 2014, Dr. Ellen Humphries, a state agency physician, opined that although Plaintiff had been given a 100% service-connected disability due to multiple medically determinable impairments, that Plaintiff could lift and/or carry fifty pounds occasionally and twenty-five pounds frequently, and could stand and or walk and could sit for about six hours in an eight-hour day. She wrote that although Plaintiff complained of failed fusion surgery, his most recent MRI indicated that his fusion was intact without evidence of cervical radiculopathy, and that Plaintiff's mild right carpal tunnel syndrome and right ulnar neuropathy only interfered with his ability to push/pull and to handle and finger. (R. pp. 103-105). See Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986) [Opinion of non-examining physicians can constitute substantial evidence to support the decision of the Commissioner].

Plaintiff underwent a cervical spine MRI on April 30, 2014. The impression was diskectomy and fusion at C5-6 and C6-7 and disc bulge at C4-5. The findings included evidence of Plaintiff's prior diskectomy and anterior fusion, and it was noted that:

> The C7-T1 disc is well-maintained. There is no stenosis at C5-6 or C6-7. There is an anterior osteophyte at C4-5. There is no significant posterior disc bulge or stenosis. The C2 and C3-4 discs are well maintained. There is no abnormal disc or cord enhancement. There is no cord injury or gliosis.

(R.p. 1634).

At the Carolina Center for Advanced Management of Pain on May 13, 2014, it was noted that manual muscle testing of Plaintiff's upper extremities revealed 5/5 (full) muscle strength, decreased right ulnar nerve distribution, and tenderness in his right elbow along the course of the ulnar nerve. Needle EMG study of Plaintiff's right upper extremity was within normal limits. The



impression was electrodiagnostic evidence of right ulnar neuropathy at the elbow, mild right carpal tunnel syndrome, and no electrodiagnostic evidence of right upper extremity radiculopathy, plexopathy, myopathy, or overt peripheral neuropathy.  It was recommended that Plaintiff use a right resting splint and a right elbow wrap at night and as needed during the day, and it was thought he might benefit from a steroid injection to his right carpal tunnel.  (R.pp. 1635-1636).

On May 27, 2014, Dr. Janet Boland, a state agency psychologist, opined that Plaintiff's mental conditions and limitations appeared to be reasonably credible, but not of sufficient severity to preclude all forms of work, and that Plaintiff's  combination of impairments did not meet or equal a listed impairment.  She thought that Plaintiff might have difficulty sustaining concentration and pace on complex tasks, but could attend to and perform simple tasks without special supervision. Dr. Boland also opined that Plaintiff might be better suited for jobs that did not require regular work with the general public.  (R.pp. 99-102, 106-108).

On May 5, 2014, psychiatrist Dr. Milagros Valentin of Moncrief Army Hospital completed a questionnaire in which he stated that he had treated Plaintiff approximately once every two months from June 2012 to May 2014 (and that Plaintiff also saw psychologist Dr. Thirkield from May 2012 to June 2013).  He wrote that Plaintiff's diagnoses were PTSD, major depression (recurrent), cognitive DS, benign paroxysmal vertigo, occipital neuralgia, cervicalgia, "* R/O" TBI with cerebral malacia from 1991 to present, s/p spinal cord injury 2008, obstructive sleep apnea with CPAP, carpal tunnel, plantar fasciitis, migraine, and diabetes.  As to Plaintiff's current mental status, Dr. Valentin noted that Plaintiff had appropriate grooming/hygiene; was oriented times four; had appropriate affect; was depressed, irritable, and anxious; had a normal thought process; had no perceptual distortions; had average cognitive ability; was moderately distractible as to



attention/concentration; and had a mild memory deficit. Dr. Valentin opined that Plaintiff had good ability to complete basic activities of daily living; adequate ability to relate to others; adequate ability to complete simple, routine tasks; poor ability to complete complex tasks; and was capable of managing his funds. (R.pp. 1624-1625).

On January 19, 2015, Dr. Cherilyn Y. Taylor, a psychologist, examined Plaintiff and summarized that as to activities of daily living, Plaintiff appeared to have no significant deficiency. As to concentration, persistence, and pace, Plaintiff was able to track the flow of conversation adequately across the 45-minute interview and did not show distraction by ambient office sounds. As to Plaintiff's social functioning, there might be potential for mild to moderate impact upon his interpersonal interactions in a work setting;[4] and that Plaintiff would likely require assistance with managing personal funds. (R.pp. 1688-1691). Dr. Taylor opined that, due to TBI and memory impairment, Plaintiff had a mild impairment of his ability to carry out simple instructions and to make judgment on simple work-related decisions and moderate limitations on his ability to understand and remember simple instructions, understand and remember complex instructions, carry out complex instructions, and to make judgment on complex work-related decisions. She thought that, due to PTSD, social impairment, and memory deficits, Plaintiff would have moderate restrictions on his ability to interact with the public, interact appropriately with supervisors, interact appropriately with co-workers, and respond appropriately to actual work situations and to changes in a routine work setting (R.pp. 1692-1693).

---

[4]The form used by Dr. Taylor defines "mild" as a slight limitation, but that the individual can generally function well. "Moderate" is defined as a more than slight limitation, but with the individual still able to function satisfactorily. (R.p. 1692).



Dr. Thomas J. Motycka conducted a comprehensive orthopedic examination and medical assessment on February 20, 2015. It was noted that Plaintiff sat comfortably on an exam table not needing to fidget or reposition for approximately twenty minutes, moved his head smoothly without any pain facies during normal conversations, and moved easily through the facility without any assistive device or problems. Plaintiff had good muscle tone indicating vigorous activities; his hands were normal and had no significant deformities, swelling, tenderness, or decreased ranges of motions; his grip strengths were +5/+5; there was no area of atrophy; and his reflexes were +2/+4. Dr. Motycka also noted that although old records indicated that Plaintiff perhaps had a radiculopathy, nerve conduction studies showed otherwise (at least the most recent ones). Records showed some ulnar neuropathy and medial nerve neuropathy on the right, and it was recommended that Plaintiff wear wraps or splints at bedtime. Dr. Motycka further noted that although Plaintiff claimed atrophy of his right frontal lobe, there were no records of this and that Plaintiff had gone on to have a twenty-two year career as a nurse in the Navy thereafter (such that the diagnosis might have been a one-off resolved concussion). Plaintiff's functioning was noted to be high and normal. Although Plaintiff had a reduced range of motion of his cervical spine, other range of motion was normal and straight leg raise testing was negative. Dr. Motycka opined that overall Plaintiff seemed to be in good shape and could continue doing nursing. (R.pp. 1726-1731, 1739-1740).

Dr. Motycka also completed a medical source statement of ability to do work-related activities in which he opined that Plaintiff could lift/carry up to ten pounds continuously, up to twenty pounds frequently, and up to fifty pounds occasionally; could sit for four hours at one time and eight hours in an eight-hour workday; could stand for up to one hour at a time and up to six hours in a workday; could walk for up to one hour at a time and up to four hours in a workday; did not require



the use of a cane to ambulate; could reach overhead occasionally with his right hand; could frequently reach, handle, finger, feel, and push/ pull with his right hand; could continuously use his feet; and could occasionally climb ladders and scaffolds, crawl, and operate a motor vehicle. (R.pp. 1733-1738).

# I.

## (Listings/Combination of Impairments)

Plaintiff initially contends that the ALJ erred in determining that he did not have a combination of impairments that met or medically equaled the severity of one of the listed impairments. He also argues that the ALJ failed to assess all of his physical and mental impairments (his severe impairments of PTSD, anxiety, depression, organic mental disorder, disorders of the spine, right upper extremity neuropathy, and headaches as well as his non-severe impairments of knee impairments, degenerative changes in the shoulder, diabetes mellitus, plantar fasciitis, sleep apnea, tinea versicolor, and obesity) in combination. See Walker v. Bowen, 889 F.2d 47 (4th Cir. 1989)[Holding that disability may result from a number of impairments which, taken separately, might not be disabling, but whose combined effect, taken together, is sufficient to render a claimant unable to engage in substantial activity].

However, Plaintiff does not identify what Listing(s) he believes his impairments meet or equal, nor does he identify what findings as to the Listing requirements the ALJ made incorrectly or without substantial evidence. It is the claimant who bears the burden of demonstrating that his impairment meets or equals a listing. Kellough v. Heckler, 785 F.2d 1147, 1152 (4th Cir. 1986); see also Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992)[claimant has the burden of production and proof at Steps 1 to 4 of the sequential evaluation process]. As Plaintiff has only made a general



argument that he met a Listing but has not specifically alleged how he met or equaled all of the requirements of any listing, he has failed to satisfy his burden with respect to this claim. See Sullivan v. Zebley, 493 U.S. at 530 ["For a claimant to show that his impairment matches a Listing, he must show that it meets *all* of the specified criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify."].

   Further, and contrary to Plaintiff's argument, the ALJ also adequately considered Plaintiff's impairments in combination. At step two, the ALJ discussed all of Plaintiff's severe and nonsevere impairments (R.pp. 12-13), and at step three he specifically found that Plaintiff did not have an impairment or *combination* of impairments that met or medically equaled a listed impairment (R.p. 13). See Flaherty v. Astrue, 515 F.3d 1067, 1071 (10th Cir. 2007)[ALJ should be taken at this word when he states that he considered all of the claimant's impairments in combination]. The ALJ also noted that Plaintiff stipulated in his pre-trial brief that Plaintiff's impairments did not meet or equal any specific listing. (R.p. 13, 287). The ALJ specifically stated at step three that Plaintiff's mental impairments, considered both singly and in combination, did not meet or medically equal the criteria of Listings 12.02, 12.04, or 12.06; (R.p. 14); and at step four stated that he had specifically considered all of Plaintiff's symptoms in making his RFC finding. The ALJ also discussed Plaintiff's testimony, the medical evidence, and the opinion evidence in determining Plaintiff's RFC. See Wright v. Astrue, No. 2:10-2449-DCN-BHH, 2011 WL 5403104, at *7-8 (D.S.C. Oct. 18, 2011)[affirming ALJ's decision where he stated he considered the claimant's combination of impairments and discussed each impairment at some point in the decision, and where he did not offer any reason to conclude that further consideration would have produced a different result], adopted, 2011 WL 5403070 (D.S.C. Nov. 8, 2011); Miller v. Astrue, No. 08-62, 2009 WL 2762350, at **13-14



(E.D.Mo. Aug. 28, 2009)["Where an ALJ separately discusses the claimant's impairments and complaints of pain, as well as her level of activity, it cannot be reasonably said that the ALJ failed to consider the claimant's impairments in combination"]; Hewitt v. Colvin, No. 14-3790, 2015 WL 9216653, at * 2 (D.S.C. Dec. 17, 2015). Finally, the ALJ discussed Plaintiff's impairments, and the limitations imposed by the combination of his impairments, in his hypothetical question to the VE. (R.p. 66).

As part of his RFC claim, Plaintiff also argues that the ALJ incorrectly assessed his back impairment because the ALJ stated that a nerve or spinal cord compromise did not exist. In support of this contention, Plaintiff submitted records of an August 2010 MRI and an August 2011 CT scan. However, Plaintiff has not provided any page numbers indicating that these records, which (notably) also pre-date his alleged onset of disability, were part of the record before the ALJ. "Reviewing courts are restricted to the administrative record in performing their limited function of determining whether the [Commissioner's] decision is supported by substantial evidence"; Huckabee v. Richardson, 468 F.2d 1380, 1381 (4th Cir. 1972); see also 42 U.S.C. § 405(g); and the Commissioner's decision should not be reversed based on evidence that is not part of the administrative record. Further, even if these records can properly be considered, they are dated more than two years before Plaintiff's alleged onset date. The ALJ properly reviewed evidence from the relevant time period in reaching his decision. That evidence includes a May 2013 cervical spine MRI, which the ALJ noted revealed "no evidence of significant central canal or neural foraminal narrowing", as well as an April 2014 cervical spine MRI, that showed no stenosis and was unremarkable other than noting Plaintiff's history of fusion. (R.pp. 16, 585, 1634).



In his reply brief, Plaintiff appears to argue that the ALJ failed to properly consider his combination of impairments because Dr. Taylor acknowledged that Plaintiff had PTSD, inattention, depression, anxiety disorder, and a nervous disorder order which resulted in impairments in his ability to understand and remember simple instructions, carry out simple tasks, make judgments on simple work-related decisions. However, as noted above, the ALJ specifically found that Plaintiff's mental impairments, considered both singly and in combination, did not meet or equal Listings 12.02, 12.04, or 12.06. (R.p. 14). Additionally, a review of Dr. Taylor's Medical Source Statement form shows that he believed Plaintiff had only mild (defined as a slight limitation and that the individual can generally function well) limitations in his ability to carry out simple instructions and to make judgments on simple work-related decisions. Although Dr. Taylor found moderate limitations in Plaintiff's ability to understand and remember simple instructions and with regard to complex work, moderate was defined as more than a slight limitation but with the individual still being able to function satisfactorily. (R.pp. 1692-1693). Thus, there is nothing in Dr. Taylor's medical Source Statement to indicate that Plaintiff would be precluded from performing simple, routine work, as found by the ALJ in his decision. (R.p. 15).

In sum, after careful consideration of the decision in conjunction with the evidence and the applicable caselaw, Plaintiff has failed to establish any error in the ALJ's review and analysis of the effects of his medical problems on his ability to work, including the effect of the combination of those impairments. Cf. Martise v. Astrue, No 08-1380, 2010 WL 889826 at * 23 (E.D. Mo. Mar. 8, 2010)[Finding that ALJ sufficiently considered Plaintiff's impairments in combination by summarizing Plaintiff's medical records and separately discussing each of Plaintiff's alleged impairments] (citing Hajek v. Shalala, 30 F.3d 89, 92 (8th Cir. 1994)[conclusory statement that ALJ



did not consider combined effects of impairments was unfounded where ALJ noted each impairment and found that impairments, alone or combined, were not of listing-level severity]; see also Browning v. Sullivan, 958 F.2d 817, 821 (8th Cir. 1992)[Finding that separate discussion of all of a plaintiff's impairments with the conclusion that these impairments did not prevent the plaintiff from performing her past relevant work was sufficient to establish that the ALJ did not consider Plaintiff's impairments were disabling in combination, and that "[t]o require a more elaborate articulation of the ALJ's thought processes would not be reasonable"]; Waxvik v. Apfel, No. 99-152, 2001 WL 1820373, at * 4 (D.N.D. Mar. 12, 2001); Isaacs v. Shalala, No. 92-4101, 1994 WL 247276, at * 5 (N.D. Iowa Mar. 11, 1994); Wilfong v. Shalala, No. 93-472, 1994 WL 780186, at * 4 (D.Minn. Oct. 18, 1994); see also Williams v. Colvin, No. 11-2344, 2013 WL 877128, at *3 (D.S.C. Mar. 8, 2013); Simmons v. Astrue, No. 11-2729, 2013 WL 530471, at * 5, n. 7 (D.S.C. Feb. 11, 2013)["When considering whether the ALJ properly considered the combined effects of impairments, the decision must be read as a whole"]; Glockner v. Astrue, No. 11-955, 2012 WL 4092618, at * 4 (D.S.C. Sept. 17, 2012). This argument is therefore without merit.

## II.

### (Medical Opinions)

Plaintiff also argues that the ALJ failed to grant sufficient weight to the medical evaluations conducted by the VA. In particular, he appears to argue that the ALJ erred in failing to discuss all of the findings of Dr. Wadman and by giving her opinion less weight than the opinions of physicians who evaluated him on only one occasion. While unclear, it appears that in making this argument, Plaintiff is asserting that Dr. Wadman is a treating physician. See Craig v. Chater, 76 F.3d 589-590 (4th Cir. 1996)[noting importance of treating physician opinions]. While this contention is



16

questionable based on the evidence,[5] even assuming that she was a "treating" physician, substantial evidence supports the ALJ's decision to give only some weight to her opinions and to discount her opinions to the extent that they are not supported by the medical evidence of the record. See Craig, 76 F.3d at 589-590 [rejection of treating physician's opinion of disability justified where the treating physician's opinion was inconsistent with substantial evidence of record]; Krogmeier v. Barnhart, 294 F.3d 1019, 1023 (8th Cir. 2002) ["[W]hen a treating physician's opinions are inconsistent or contrary to the medical evidence as a whole, they are entitled to less weight"](citations omitted).

The ALJ found that Dr. Wadman's opinion that Plaintiff had some issues with attention and remembering tasks was generally consistent with the opinions of Drs. Wright, Boland, and Taylor, but discounted Dr. Wadman's reports that Plaintiff had marked fatigue due to his head injury because it was inconsistent with Dr. Wadman's own reports that Plaintiff had only mild work problems from his head injury and because there was no explanation how a head injury would result in fatigue.[6]  Plaintiff's head injury was reportedly suffered in 1990 or 1991, but he was able to continue working for many years thereafter, a fact inconsistent with Dr. Wadman's report of Plaintiff

---

[5]As noted above, Dr. Wadman completed a PTSD questionnaire in June 2012 (R.pp. 343-355, 1671-1675) and a C&P examination and TBI questionnaire in May 2013 (R.pp. 473-484). Plaintiff states that Dr. Wadman treated him on multiple occasions, but fails to cite to any specific treatment records.

[6]Plaintiff also argues that the ALJ failed to mention a multitude of other findings by Dr. Wadman during the May 15, 2013 examination, including an assessment of Plaintiff's Global Assessment of Functioning (GAF) score as 50, indicating serious symptoms. However, there is no indication that Dr. Wadman assessed Plaintiff's GAF in the May 2013 examination. (R.pp. 473-484). She did assess his GAF as being 50 during the June 2012 examination, but this was more than a year prior to Plaintiff's alleged onset of disability date, when Plaintiff is not even himself contending his condition was disabling. (R.p. 344). There is no indication that Dr. Wadman found such alleged serious symptoms in May 2013. Further, a GAF score "is only a snapshot in time, and not indicative of [his] long term level of functioning." Parker v. Astrue, 664 F. Supp. 2d 544, 557 (D.S.C. 2009).

17



suffering from marked fatigue due to this injury. The ALJ also discounted Dr. Wadman's opinion that Plaintiff had frequent interference in his interaction due to neurobehavioral issues because these opinions were inconsistent with her reports that Plaintiff acted appropriately. (R.p. 22). Additionally, the ALJ's decision to discount Dr. Wadman opinions is supported by the opinions of the state agency physicians and psychologists, who opined that Plaintiff could perform a reduced range of unskilled, medium work.[7] (R.pp. 83-90, 99-108). See Johnson v. Barnhart, 434 F.3d 650, 657 (4th Cir. 2005)[ALJ can give significant weight to opinion of medical expert who has thoroughly reviewed the record]; Stanley v. Barnhart, 116 F. App'x 427, 429 (4th Cir. 2004)[disagreeing with argument that ALJ improperly gave more weight to RFC assessments of non-examining state agency physicians over those of examining physicians]; 20 C.F.R. §§ 404.1527(e); SSR 96-6p, 1996 WL 374180, at *1 (July 2, 1996) ["Findings of fact made by State agency ... [physicians ]... regarding the nature and severity of an individual's impairments must be treated as expert opinion of non-examining sources at the [ALJ] and Appeals Council level of administrative review."].

Further, and contrary to Plaintiff's assertions that the ALJ failed to adequately consider the medical record, the ALJ discussed Plaintiff's treatment by the Department of Defense and VA providers at length. (R.pp. 12-13, 14-15, 17-19). The ALJ specifically gave great weight to the opinion of Dr. Valentin, a psychiatrist at Moncrief Army Hospital who treated Plaintiff over a period

---

[7]Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. §§ 404.1567(c), 416.967(c). This is actually a physical RFC even higher than assigned by the ALJ in the decision, who gave Plaintiff a lower physical RFC of light work. (R.p. 15) See Marquez v. Astrue, No. 08-206, 2009 WL 3063106 at * 4 (C.D.Cal. Sept. 21, 2006)[No error where ALJ's RFC finding was even more restrictive than the exertional levels suggested by the State Agency examiner]; cf. Muir v. Astrue, No. 07-727, 2009 WL 799459, at * 6 (M.D.Fla. Mar. 24, 2009)[No error where ALJ gave Plaintiff even a more restrictive RFC than the medical records provided].



of a couple of years.[8]  (R.p. 21).  As noted above, Dr. Valentin found that Plaintiff had adequate

ability to complete simple, routine tasks and to relate to others.  (R.p. 1625).  The ALJ also

specifically considered the Army's Physical Profile from October 2012.  (R.p. 327).  The ALJ noted

that he gave this Physical Profile some weight, but that most of the limitations were largely specific

to the military.  He also found that reports that Plaintiff could not lift over fifteen pounds, perform

repetitive bending, or perform overhead reaching were inconsistent with the opinions of examining

physician Dr. Motycka and state agency physician Dr. Humphries.  (R.p. 23).  See also (R.pp. 103-

105, 1733-1738).

       The ALJ also specifically considered the VA ratings and gave them some weight.

While such VA determinations can be accorded substantial weight; see Bird v. Commissioner of

Social Security, 699 F.3d 337, 343-344 (4th Cir. Nov. 9, 2012) ["SSA must give substantial weight

to a VA disability rating"]; an ALJ "may give less weight to a VA disability rating [if a finding is

made that] the record before the ALJ clearly demonstrates that such a deviation is appropriate;" Bird,

699 F.3d at 343; although it is incumbent upon the ALJ to explain his or her rationale for doing so.

See SSR 06-03P, 2006 WL 2329939, at * 7 (SSA) [ALJ "should explain the consideration given to

[the VA disability determination] in notice of decision . . ."]; cf. Kowalske v. Astrue, No. 10-339,

2012 WL 32967, at * 4 (W.D.N.Y. Jan. 6, 2012)[Noting that since the VA determination is itself

entitled to at least some evidentiary weight in addition to the other record evidence, the adjudicator

should explain the consideration given to this decision]; Jamiah v. Astrue, No. 09-1761, 2010 WL

---

[8]The record contains numerous treatment notes from Dr. Valentin.  (See R.pp. 512-517, 531-
534, 541-544, 651-657, 592-596, 675-681, 731-734, 949-952, 1220-1224, 1615-1619).



1997886, at * 16 (N.D.Ga. May 27, 2010)[Noting that due to the significance of a VA determination, the ALJ must state specifically the weight accorded the evidence and the reason for his decision].

Here, in compliance with <u>Bird</u>, the ALJ did clearly explain his decision to only give the VA ratings some weight. The ALJ discounted the VA ratings in part because those ratings did not imply any particular work-related or functional limitations. (R.p. 23). The ALJ also stated that he discounted the ratings because he concluded that a number of Plaintiff's impairments (to which the VA rating assigned great weight) were nonsevere for purposes of a Social Security claim. (R.p. 12-13, 23). Additionally, the ALJ discounted these opinions based on objective medical evidence, including the various physical examinations (including Dr. Motycka's examination in particular), cervical spine imaging, mental status examinations, and electromyography which did not show Plaintiff's impairments to be as limiting as found by the VA. It was noted that state agency physician Dr. Humphries found that Plaintiff's cervical spine and right arm impairments were not highly limiting; Drs. Wright, Boland, Valentin, and Taylor all opined that Plaintiff's mental impairments were not highly limiting; treatment notes indicated that Plaintiff's headaches responded to medication; that Plaintiff did not require repeated emergent treatment for his headaches; and that that Plaintiff did not seek ongoing treatment by a neurologist. Finally, the ALJ found that Plaintiff reported some significant daily activities despite his impairments. (R.p. 23-24). Hence, the undersigned can discern no reversible error in the ALJ's treatment of the VA ratings in the record.

### III.

### (Step 5 Findings/VE Testimony)

Plaintiff's final claim is that the ALJ "erred in directing Plaintiff to seek jobs recommended by the [VE], but which were limited by the [ALJ's] restrictions set forth in his



opinion." Plaintiff's Brief, ECF No. 11 at 7.[9] He appears to argue that he cannot perform the jobs identified by the VE because these jobs require a claimant to perform activities precluded by his limitations.

The ALJ asked the VE to consider a claimant of Plaintiff's age, education, and work experience who was limited to light and unskilled work;[10] occasional pushing and pulling with the dominant upper extremity; occasional postural activities, but no climbing ladders, ropes, and scaffolds; frequently (but not constant) reaching, handling, or fingering with his dominant upper extremity; occasional feeling with his dominant hand; avoidance of concentrated exposure to bright flashing lights or similar visual stimuli; and no public interaction. (R.p. 66). In response, the VE identified a significant number of jobs in the national economy that Plaintiff could perform with these limitations. (R.p. 67).

Plaintiff may be attempting to argue that the ALJ should have included further limitations as to his mental impairments. However, unlike as was the case in Mascio v. Colvin, 780 F.3d 632, 636 (4th Cir. 2015)["[A]n ALJ does not account 'for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work.'"] (quoting Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1180 (11th Cir.

---

[9]Contrary to Plaintiff's assertions, the ALJ did not direct Plaintiff to seek only these two occupations, but found that, considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. As part of the Step 5 process, the VE testified that based on the hypothetical posed by the ALJ, a claimant would be able to perform the requirements of representative occupations such as inspector and machine tender. (R.pp. 24-25). See (R.pp. 66-67).

[10]Unskilled work is defined as "work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time.... [A] person can usually learn to do the job in 30 days, and little specific vocational preparation and judgment are needed." 20 C.F.R. § 404.1568(a); SSR 83–10, 1983 WL 31251, at *7.



2011)), the ALJ's RFC determination in this case, as well as the hypothetical question to the VE, adequately accounted for Plaintiff's work-related functional limitations from his mental impairments as found by the ALJ. In <u>Mascio</u>, the ALJ noted that, despite the ALJ's findings at step three that the claimant had moderate difficulties in concentration, persistence, or pace as a side effect of her pain medication, the ALJ's RFC finding did not contain any limitations regarding Mascio's mental functioning, except a notation that Mascio was limited to "unskilled work." <u>Mascio</u>, 780 F.3d at 638. Although it was noted in <u>Mascio</u> that the ALJ might find that the concentration, persistence, or pace limitation did not affect Mascio's ability to work, the court in that case could discern no such reason in the ALJ's decision, warranting remand. <u>Id.</u>

However, in the present case, the ALJ specifically found that because the evidence lent support to Plaintiff's testimony that he has memory and concentration issues, experiences irritability, has PTSD symptoms, experiences nervousness, has depression, and has problems being around crowds, that he was restricting Plaintiff to performing unskilled work with no public interaction. Even so, the ALJ also further specifically found that other evidence indicated that Plaintiff's mental impairments were not highly limiting, and did not warrant any additional limitations, noting that Plaintiff's mental status examinations were often unremarkable, showing appropriate behavior, appearance, speech, language, thought processes, and judgment, which suggested that his functional abilities were mostly intact. (R.pp. 18, 501, 556, 584, 1015, 1353, 1357, 1698, 1711). The ALJ also cited to medical records indicating that Plaintiff's cognitive disorder was described as only mild, that testing indicating normal intelligence, and Dr. Mooney's determination that Plaintiff met Army



retention standards in 2012 despite Plaintiff's cognitive impairment.[11] (R.pp. 18, 389, 391, 393).  The ALJ noted that some medical tests and records suggested that the onset of Plaintiff's brain injury may have been very early in his life (R.p. 1015), while others indicated his cognitive disorder might be related to head injury in 1990 or 1991 (R.pp. 475, 1624) , but that either way Plaintiff had been able to work for decades after suffering his head injury, suggesting that the injury did not cause a great deal of vocational limitations.  (R.p. 18).

As also noted by the ALJ, Dr. Valentin found that Plaintiff's mental impairments were not highly limiting and did not preclude the performance of unskilled work, and that although Plaintiff's mental impairments resulted in a poor ability to complete complex tasks, Plaintiff had a good ability to complete activities of daily living and adequate ability to relate to others and complete simple routine tasks.  (R.pp. 18, 1624-1625).  Next, the ALJ noted that Dr. Taylor's report indicated that Plaintiff's mental impairments were not limiting and did not warrant greater limitations than those described in the RFC based on Dr. Taylor's notations that Plaintiff was cooperative, dressed appropriately, had logical thought processes, had some memory issues, was pleasant, demonstrated no pain behavior, demonstrated no psychomotor agitation or retardation, had average intelligence, demonstrated good judgment, and had no difficulty in following simple instructions.  Although Dr. Taylor reported that Plaintiff had moderate issues with socialization, she noted that he had no significant limitations in his ability to conform to social expectations.  (R.pp. 18, 1688-1694).  Additionally, the ALJ noted Plaintiff's reported daily activities and indicated that Plaintiff was

---

[11]On May 3, 2013, Dr. John Riggs also wrote that from a purely cognitive standpoint Plaintiff would meet retention standards, but that Dr. Riggs would invite other providers to offer an opinion on whether Plaintiff's pain or other behavioral health issues would represent a barrier to continued service.  (R.p. 614).



capable of carrying out simple tasks and engaging in some interaction.  The ALJ specifically noted that Plaintiff reported in January 2015 that he had a fiancé and could prepare basic meals, assist with laundry, perform light housework, and shop, and that treatment notes from January 2015 indicated that Plaintiff did volunteer work training families in CPR and first aid.  (R.pp. 18, 1689, 1718).  Finally, the ALJ noted that state agency psychologists Drs. Wright and Boland indicated that Plaintiff retained the ability to perform simple tasks with limited public interaction.  (R.pp. 19, 83-85, 99-102).

The Winschel case, on which Mascio relies, recognized that "when medical evidence demonstrates that a claimant can engage in simple, routine tasks or unskilled work despite limitations in concentration, persistence, and pace, courts have concluded that limiting the hypothetical to include only unskilled work sufficiently accounts for such limitations." 631 F.3d at 1180 (citing Simila v. Astrue, 573 F.3d 503, 521–22 (7th Cir. 2009); Stubbs–Danielson v. Astrue, 539 F.3d 1169, 1173–76 (9th Cir. 2008); Howard v. Massanari, 255 F.3d 577, 582 (8th Cir. 2001)).  A review of the ALJ's decision shows that this standard has been met in this case.

Plaintiff also poses additional objections to the finding that he could perform the jobs indicated.  He argues that he would not be able to perform the jobs identified due to his medication side effects.  However, the ALJ specifically noted Plaintiff's testimony concerning medication side effects (R.p. 16), but stated that he included no related limitations because treatment notes did not document repeated complaints of drowsiness while the medical notes, at times, specifically stated that Plaintiff had no side effects from medications.  (R.p. 19).  While Plaintiff also argues that "it is clear that as an inspector and machine tender, Plaintiff would regularly be faced with public interaction," the ALJ specifically included a limitation of "[n]o public interaction required as part of the job duties" in his hypothetical to the VE (R.p. 66), and the VE  in response identified jobs that such a



24

claimant could perform (R.p. 67). See Wilson v. Califano, 617 F.2d 1050, 1053 (4th Cir. 1980)[ALJ may rely on VE opinion based on training, experience and familiarity with skills necessary to function in various jobs]. Additionally, the Dictionary of Occupational Titles (DOT) indicates that as to the identified jobs, "people - Taking Instructions-Helping" was "Not Significant." See Dictionary of Occupational Titles, Nos. 222.687-042 and 920.85-086; see also Larsen v. Astrue, No. 1:10–CV–00936–JLT, 2011 WL 3359676, at * 15 (E.D.Cal. Aug.3, 2011)[jobs with "not significant" level of interaction in DOT appropriate for claimants with RFC specifying limited or occasional coworker contact]; Arsenault v. Astrue, No. 08–269–P–H, 2009 WL 982225, at *3 (D.Me. Apr.12, 2009)[noting that other courts found that a description that "people" "Taking Instructions-Helping" was required but was "Not Significant" indicated that "interaction with the public and/or coworkers and supervisors was not significant or not more than occasional"].

Finally, Plaintiff also appears to argue that the jobs identified by the VE require a worker to frequently climb ladders and scaffolds, and to perform more than occasional postural activities, and/or to more than frequently reach, handle, finger or feel with his dominant extremity. However, as noted above, the ALJ specifically included limitations of only occasional postural activities; no climbing ladders, ropes, or scaffolds; frequent (not constant) reaching, handling, and fingering with the dominant upper extremity; and occasional feeling with the dominant hand, in response to which the VE identified jobs the claimant could perform with these limitations. Further, reference to the DOT indicates that the jobs identified by the VE meet the restrictions (or were even more restrictive) than the restrictions included in the hypothetical. Specifically, the jobs identified by the VE do not require climbing, balancing, stooping, kneeling, crouching, crawling, or feeling;



only require frequent reaching and handling; and require no fingering or at most occasional fingering. See Dictionary of Occupational Titles, Nos. 222.687-042 and 920.85-086

In sum, as the ALJ included the limitations contained in his RFC in his hypothetical to the VE, the hypothetical given to the VE was proper, and the undersigned can find no grounds in the ALJ's treatment of the VE's testimony for reversal of the final decision of the Commissioner. Lee v. Sullivan, 945 F.2d 687, 692 (4th Cir. 1991) [ALJ not required to include limitations or restrictions in his hypothetical question that he finds are not supported by the record]; see also Martinez v. Heckler, 807 F.2d 771, 773 (9th Cir. 1986).

## Conclusion

Substantial evidence is defined as "... evidence which a reasoning mind would accept as sufficient to support a particular conclusion." Shively v. Heckler, 739 F.2d 987, 989 (4th Cir.1984). As previously noted, if the record contains substantial evidence to support the decision (i.e., if there is sufficient evidence to justify a refusal to direct a verdict were the case before a jury), this Court is required to uphold the decision, even should the Court disagree with the decision. Blalock, 483 F.2d at 775.

Under this standard, the record contains substantial evidence to support the conclusion of the Commissioner that the Plaintiff was not disabled within the meaning of the Social Security Act during the relevant time period. Therefore, it is recommended that the decision of the Commissioner be affirmed.



The parties are referred to the notice page attached hereto.

_____
Bristow Marchant
United States Magistrate Judge

September 7, 2016
Charleston, South Carolina

27



**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
Post Office Box 835
Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

